IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MOMA BEAUTY SALON INC.

   *Plaintiff*

   v.

CLETUS GAZA, *et al.*

   *Defendants*.

Civil No.:  ELH-24-03381

## MEMORANDUM AND ORDER

This Memorandum addresses motions for default judgment filed by plaintiff MOMA Beauty Salon Inc. ("Moma") on December 10, 2025, against defendants Cletus Gaza and AYALEX Group.  *See* ECF 32 (Gaza); ECF 33 (Ayalex Group).

The motions pertain to a suit filed by Moma on November 23, 2024,  against defendants Cletus Gaza; AYALEX Group ("Ayalex"); and East Coast Warehouse & Distribution Corp ("East Coast").  ECF 1 (the "Complaint").  In the suit, laintiff alleges negligence, breach of contract, and fraud in connection with the shipping of cargo from Baltimore to Cameroon.  *Id.* ¶¶ 6–12.[1]  Moma seeks damages totaling $46,142.  *Id.* at 4–5.  The Complaint is supported by six exhibits.  ECF 1-1.[2]  An order of default was entered against Gaza and Ayalex on November 12, 2025.  ECF 27.

At this juncture, no hearing is necessary to resolve the motions for default judgment.  Local

---

[1]  Plaintiff asserts:  "This is a case of admiralty and maritime jurisdiction", pursuant to 28 U.S.C. § 1333.  ECF 1 at 2.  The case was initially assigned to me.  *See* Docket.  The represented parties unanimously consented to a magistrate judge for all proceedings.  ECF 14.  Therefore, the case was referred to Magistrate Judge Copperthite.  ECF 17.  However, the case was reassigned to Magistrate Judge Crawford in March 2025, due to the retirement of Judge Copperthite. *See* Docket. In December 2025, after plaintiff filed motions for default against Gaza and Ayalex, the case was assigned back to me.  *Id.*

[2] The six exhibits were docketed collectively in ECF 1-1.

Rule 105.6. For the reasons that follow, I shall defer ruling on the motions, pending plaintiff's submission of additional information.

## I.     Factual Background

Moma alleges that it hired Gaza to assist in the shipping of its cargo. ECF 1, ¶ 2.[3] Plaintiff claims that it paid Gaza $5,916 in shipping charges and $2,000 in "demurrage."[4]  *Id.* ¶ 4.[5] According to plaintiff, Gaza subcontracted his freight forwarder duties to Ayalex, calling Ayalex his business partner.  *Id.*  And, Gaza allegedly "promised" to pay the freight forwarder fees he had received from Moma to Ayalex.  *Id.*

Moma's cargo, which consisted of "a 2015 Hyundai Santa Fe, a 2007 Mitsubishi Outlander, a 1995 Toyota Tacoma, scores of I-phones and other consumable goods", was "stuffed" in a shipping container.  *Id.* ¶ 3.  But, plaintiff claims: "The Defendants negligently assigned a wrong container for the cargo causing the container to be drayed back to the warehouse where it was unstuffed, and then re-stuffed into the correct container."  *Id.* ¶ 7.  Then, "US Customs . . . flagged the container for secondary inspection[.]"  *Id.* ¶ 8.

To comply with the inspection, the goods were "unstuffed for inspection and restuffed at East Coast," without notice to plaintiff, whose representatives therefore were not present "to ensure that cargo was properly loaded."  *Id.*  Plaintiff asserts that Gaza and Ayalex "failed to notify" Moma "in a timely manner" when the inspection was complete, "causing the container to incur unnecessary additional demurrage charges."  *Id.* ¶ 10 (citing ECF 1-1 at 4–6, labeled as "Exhibit

---

[3] Under the circumstances, I must assume the truth of the facts alleged in the suit, other than those pertaining to damages, as discussed *infra*. *See Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001); *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010).

[4] Demurrage is "a charge for detaining a ship, freight car, or truck[.]"  *Demurrage,* MERRIAM WEBSTER DICTIONARY (last accessed Apr. 1, 2026), https://perma.cc/MQB6-22K6.

[5] The total payment equals $7,916.  But, in ECF 1, ¶ 4, plaintiff alleges that plaintiff paid Gaza $75,916.  This appears to be a typographical error.

2 Additional Demurrage & Late Charges"). And, the container was "stuffed incorrectly." *Id.* ¶ 10. Therefore, when the goods arrived in Cameroon, they were severely damaged. *Id.* ¶ 11; *see* ECF 1-1 at 7–14 (Joint Cargo Survey Report).

Mr. Divine Moma, a representative of Moma, traveled to Douala, Cameroon "to clear the container [containing Moma cargo] through Customs." ECF 1, ¶ 15; *see id.* ¶ 13. According to plaintiff, Ayalex claimed that Gaza "never transferred the freight charges and fees payments that Moma Beauty Salon made to [Gaza] to pay the freight forwarder." *Id.* ¶ 13. Therefore, plaintiff "could not clear the container through customs[.]" *Id*. Moma paid Ayalex the freight forwarder fees, $5,916, on February 15, 2024, "[u]nder duress." *Id.* ¶ 16. Subsequently, plaintiff was able to clear the shipping container through customs but the cargo was "damaged[.]" *Id* ¶ 17.

In short, plaintiff claims that Gaza misappropriated the money Moma paid to him to cover the freight forwarding fees, forcing Moma to pay twice for freight forwarding services, for which it only should have had to pay once. *See id.* ¶ 15. Further, Moma contends that because of Gaza's "misappropriation of the funds intended for the freight forwarder, Ayalex Group, Mr. Divine Moma . . . became stranded in Douala for two months and three weeks while attempting to clear the container." *Id.* As a result, the beauty salon became inactive, causing lost revenue. *Id.* at 4. Moreover, Mr. Moma incurred hotel charges to stay in Cameroon, and Mr. Moma lost income from his health care job. *Id*.

Plaintiff asserts joint and several liability as to the sum of $5,916. ECF 1 at 4. Further, Moma seeks the sum of $3,200 for "demurrage" to compensate for the fees he "was forced to pay" because Moma's cargo "was assigned a wrong container" and Moma "was not notified in a timely manner when [the] container was flagged for secondary inspection[.]" *Id.* And, Moma seeks $24,900 for revenue "Plaintiff lost due to business interruption when [Mr. Moma's] beauty salon

in Baltimore was inactive while [Mr. Moma] was stuck in Douala, Cameroon, dealing with container clearance delays . . . ."  *Id.*  Additionally, Moma seeks $7,750 to compensate for the time Mr. Moma could not report to his healthcare job because he was stuck in Douala, and $4,736 for hotel charges Mr. Moma incurred during his time in Douala.  *Id.* at 4–5.

East Coast answered the Complaint.  ECF 8.  Subsequently, Moma resolved the claims as to East Coast, and East Coast was dismissed as a party.  ECF 30; ECF 31.  Accordingly, the only claims that remain are those lodged against Gaza and Ayalex.

Plaintiff filed an Affidavit of Service as to defendants on February 20, 2025.  ECF 11.  It reflects that Gaza and Ayalex were both served with the suit on December 16, 2024.  *Id.* at 1 (Gaza); ECF 11-1 at 1 (Ayalex).   But, defendants failed to respond to the suit. *See* Docket.  As a result, the Clerk entered an order of default against them on November 12, 2025.  ECF 27.

The Docket also reflects that the Clerk sent a "Notice Of Default" to Gaza and Ayalex on the same date. ECF 28 (Ayalex); ECF 29 (Gaza).  In particular, the Clerk notified both defendants that "an order of default was entered" against them and that they had thirty days from the date of the notice to "file a motion to vacate the order of default."  *Id.* The notice also warned that if defendants did "not take action" the Court would "act promptly on any pending motions for entry of default judgment, which may result in a monetary judgment against" the defendants.  *Id.*

Pursuant to Fed. R. Civ. P. 55(b), Moma has moved for entry of a default judgment as to each defendant.  ECF 32 (Gaza); ECF 33 (Ayalex) (collectively, the "Motions").  In each motion, plaintiff seeks total damages of $46,142.  ECF 32 at 3; ECF 33 at 3.  Each motion is supported by a certificate of service (ECF 32 at 2; ECF 33 at 2) and an affidavit in support of the motion for default judgment authored by plaintiff's counsel (ECF 32 at 3–4; ECF 33 at 3–4).  Notably,

plaintiff's counsel represents that he sent copies of the Motions in a first class postage-paid envelope to the last known address associated with Gaza (ECF 32 at 2) and Ayalex (ECF 33 at 2).

Defendants have not responded to the Motions. And, the time to do so has expired. *See* Local Rule 105.2(a).

## II.  Discussion

### A.

Rule 55(b) of the Federal Rules of Civil Procedure governs default judgments. In particular, Rule 55(b)(1) provides that the clerk may enter a default judgment if plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." But, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (Grimm, M.J.).[6]

Rule 55(b)(2) states, in part: "In all other cases, the party must apply to the court for a default judgment." In *Aleman v. Marroquin*, GLR-23-2475, 2025 WL 2050959, at *2 (D. Md. July 22, 2025), the court explained: "If, after entry of default, the Plaintiff's complaint does not specify a sum certain amount of damages, the court may enter a default judgment against the defendant pursuant to Rule 55(b)(2)." (Internal quotation marks omitted).

Further, Rule 55(b)(2) provides that the court "may conduct hearings or make referrals-- preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs

---

[6] Judge Grimm authored *Monge* when he served as a United States Magistrate Judge. He subsequently served as a United States District Court Judge in Maryland and retired in December 2022.

to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

It is well established that the Fourth Circuit has a "strong policy favoring the disposition of cases on the merits . . . ." *Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 229 (4th Cir. 2019) (discussing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)), *cert. denied*, 588 U.S. 909 (2019); *see Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013); *Benchmark Ins. Co. v. Total Remodeling Contractor LLC*, LKG-25-00811, 2026 WL 319051, at *3 (D. Md. Feb. 6, 2026). Nevertheless, default judgment "'is appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Garnier-Thiebaut, Inc. v. Castello 1935 Inc.*, SDT-17-3632, 2019 WL 6696694, at *1 (D. Md. Dec. 6, 2019) (Thacker, J.) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013)); *see Lawbaugh*, 359 F. Supp. 2d at 421. In the event of an order of default, all factual allegations in the complaint are deemed admitted, *except* those pertaining to damages. *See* Fed. R. Civ. P. 8(b)(6); *United States v. Bob Bakers Golden Servs. Inc.*, PX-22-191, 2023 WL 3304897, at *2 (D. Md. May 8, 2023); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (stating that by virtue of defendant's default, the court accepts as true the well pleaded factual allegations in the complaint as to liability).

Even if the factual allegations are deemed admitted, the court must determine whether the undisputed factual allegations constitute a legitimate cause of action. *See Ryan*, 253 F.3d at 780–81. If the court is satisfied that liability has been established, it must then determine the appropriate amount of damages. *Bob Bakers Golden Servs. Inc.*, 2023 WL 3304897, at *2. Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is

demanded in the pleadings." *See In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) ("When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages."). This is meant to enable the defendant to decide whether to expend the resources to defend the action. *Monge*, 751 F. Supp. 2d at 796.

**B.**

As indicated, and of import here, allegations "relating to the amount of damages" are not deemed admitted even when a defendant fails to respond to a suit. Fed R. Civ. P. 8(b)(6); *see Monge*, 751 F. Supp. 2d at 794; *Trustees of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, NKM-09-0004, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) ("Upon default judgment, Plaintiff's factual allegations are accepted as true for all purposes excluding determination of damages."). Indeed, despite entry of an order of default, a defendant may contest the amount the plaintiff seeks in damages. *See Buchannon v. Associated Credit Servs., Inc.,* RTB-20-02245, 2021 WL 5360971, at *10 (S.D. Cal. Nov. 17, 2021) ("[D]efault may establish liability but does not qualify as an admission on damages. There are many instances where a defendant may want to reduce attorney's fees and costs by admitting liability but challenge damages, and preventing a defendant from doing so would not serve the interests of judicial economy.").

Here, defendants do not contest the amount of damages. But, this does not relieve the Court of its responsibility to ascertain that plaintiff has asserted viable claims and the amount of damages.

Plaintiff has not clearly articulated the terms governing the contract between Gaza and Moma.  The Complaint indicates that plaintiff agreed that Gaza could subcontract his freight forwarder responsibilities to Ayalex.  ECF 1, ¶ 4 (stating that "Plaintiff paid Mr. Cletus Gaza . . . and Mr. Gaza promised to pay that amount to Ayalex Group purported to be his business partners").  Elsewhere in the Complaint, plaintiff claims that Gaza "breached the contract by subcontracting his freight forwarding obligations to Ayalex, and not paying Ayalex for their services."  *Id.* ¶ 14.  Furthermore, the Complaint does not make clear whether it was Ayalex or Gaza, in their roles as freight forwarders, that actually transported the cargo at issue.  This is relevant to plaintiff's negligence claim.

The term "freight forwarder" has more than one meaning.  As the Supreme Court observed in *Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Acme Fast Freight, Inc.,* 336 U.S. 465 (1949), one must "distinguish between two very different kinds of 'forwarders.'" *Id.* at 484. The Supreme Court stated, *id.*

> The term ["freight forwarder"] was originally applied to persons who arrange for the transportation by common carrier of the shipper's goods. The forwarder['s] . . . duties, as agent of the shipper, went no farther than procuring transportation by carrier and handling the details of shipment . . . .
>
> Later, a different type of forwarding service was offered. This forwarder picked up the less than carload shipment at the shipper's place of business and engaged to deliver it safely at its ultimate destination. The freight forwarder charged a rate covering the entire transportation and made its profit by consolidating the shipment with others in carload quantities to take advantage of the spread between carload and [less-than-carload] rates. It held itself out not merely to arrange with common carriers for the transportation of the goods, but rather to deliver them safely to the consignee. The shipper seldom if ever knew which carrier would be utilized in the carriage of his shipment.

As the Supreme Court explained, Congress regulated the second type of freight forwarder, which takes actual physical possession of cargo in order to consolidate small shipments into larger lots. *See id.* at 485 ("The Freight Forwarder Act encompasses only the second type of forwarder

described above."); 49 U.S.C. § 13102(8) (definition of "freight forwarder" in the Freight Forwarder Act, a component of the Interstate Commerce Act).  The freight forwarders in the second group carry the duty of care of the common carrier, whereas freight forwarders in the first category are "liable to the shipper only for its own negligence, including negligence in selecting a carrier." *Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 336 U.S. at 484–85.

Here, the facts in the Complaint do not make clear what kind of freight forwarder either Ayalex or Gaza purported to be.  The bill of lading (ECF 1-1 at 2, "Bill of Lading") shows the freight charges Ayalex charged to Gaza, but does not indicate whether Ayalex actually was in possession of the shipping container during transit from Baltimore to Douala, or rather solely arranged for its transport on the ship that carried the cargo, the Candice.  *See* ECF 1-1 at 2.

Moreover, the court must make an independent determination regarding allegations as to damages.  *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). The court may make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages.  *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *Monge*, 751 F. Supp. 2d at 795 (same); *Pentech Fin. Servs., Inc.*, 2009 WL 1872535, at *2 (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment because plaintiff submitted affidavits and records establishing the amount of damages); *JTH Tax, Inc. v. Smith*, RAJ-6-76, 2006 WL 1982762, at *2 (E.D. Va. June 23, 2006) ("If the defendant does

not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing."). But, the court may also conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2).

In reviewing the Motions, the Court has observed discrepancies between the information contained in the exhibits appended to the Complaint and the allegations in the Complaint. As part of plaintiff's breach of contract and fraud claims, plaintiff contends that Moma paid Gaza freight forwarding charges, citing plaintiff's Exhibit 5 (ECF 1-1 at 15). *See* ECF 1, ¶ 14. Plaintiff's Exhibit 5 appears to be a receipt for a payment made to East Coast, an entity which is no longer a party to this suit. ECF 1-1 at 15. The receipt does not mention Moma or Gaza.

Moreover, Moma claims that it paid a total of $7,916 to Gaza. ECF 1, ¶ 4. But, the receipt only shows payment of $3,123.63. ECF 1-1 at 15. Accordingly, Exhibit 5 does not appear to support plaintiff's claim regarding Moma's payment to Gaza.

Furthermore, plaintiff claims that because of defendants' alleged negligence, Moma's cargo accrued demurrage fees, for a total of $3,200. ECF 1, ¶ 10; *id.* at 4. In support of this assertion, plaintiff cites plaintiff's Exhibit 2 (ECF 1-1 at 4–6). *See* ECF 1, ¶ 10. Exhibit 2 is a blurry picture of a receipt from PNC Bank that shows a transaction amount of $3,500, along with two copies of bills issued by Régie Du Terminal À Conteneurs ("RTC"). ECF 1-1 at 4–6.[7] The documents issued by RTC charge a total of $131,413.50 Central African CFA francs. Plaintiff does not indicate the value of that amount in U.S. currency.

As to damages, plaintiff has not adequately documented its claims as to the sums requested. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("[T]he court may rely on detailed

---

[7] Several of plaintiff's exhibits are written in French, and plaintiff has not offered English translations of these exhibits. *See* ECF 1-1 at 5–8.

affidavits or documentary evidence to determine the appropriate sum.").  In particular, plaintiff seeks recovery of $5,916 to compensate for the amount it paid to Ayalex for freight forwarding charges, after it had already paid Gaza for that service.  ECF 32 at 3; ECF 33 at 3.  Plaintiff claims that Gaza "misappropriat[ed]" the money Moma paid him, which Gaza had promised to pay Ayalex to compensate for its freight forwarding services.  ECF 1, ¶ 15; *id.* ¶ 4.  Because of Gaza's misappropriation, plaintiff claims that he was wrongfully required "to pay $5,916 twice", once to Gaza and then again to Ayalex, "for the same freight forwarding services and fees[.]"  ECF 32 at 3.  Plaintiff seeks to recover the fees that he had to pay because of Gaza's misappropriation.  The Bill of Lading shows that Ayalex invoiced Gaza for $5,916, for shipping charges associated with transporting the cargo.  ECF 1-1 at 2.  But, plaintiff has not submitted evidence that it paid this amount to Gaza or Ayalex, as alleged in the suit.

Furthermore, plaintiff seeks to recover $24,900 in revenue that plaintiff allegedly lost due to business interruption when plaintiff's beauty salon in Baltimore was inactive while plaintiff's representative[8] was stuck in Douala; $7,750 in lost income that plaintiff's representative suffered when he could not report to his health care job in Baltimore because he was stuck in Douala; and $4,376 for hotel charges Moma "had to pay in Douala, Cameroon" for its representative to "stay there and resolve issues that were causing delays in clearing their container through customs[.]"  ECF 32 at 4; ECF 33 at 4.  In the Motions, plaintiff provides no evidence to substantiate the requested amounts.

### III.    Conclusion

---

[8] In the Complaint and the Motions, plaintiff occasionally uses the male pronoun to refer to itself.  *See, e.g.,* ECF 32 at 4.  The Court assumes that when plaintiff uses the male pronoun it is referring to its representative, Divine Moma.

Even in the face of a default by a defendant, the Court is not a rubber stamp. On the information presented, the Court is unable to award the damages requested by plaintiff. However, the Court will grant plaintiff the opportunity to supplement the record to cure, if possible, certain deficiencies.

Should Moma choose to submit additional evidence to support the Motions, it must do so by **May 4, 2026.** In the absence of the submission of further information by that date, the Court will adjudicate the Motions based on information contained in the Complaint and the Motions.

The Clerk shall promptly mail copies of this Memorandum and Order to defendants at the following addresses:

Mr. Cletus Gaza
8836 Washington Boulevard, Unit 101
Jessup, Maryland 20794

Ayalex Group
6715 Backlick Road, Suite 202
Springfield, Virginia 22150

It is so **ORDERED**, this 9th day of April, 2026.


          /s/

Ellen Lipton Hollander
United States District Judge